UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SIREE D. VENNOR,

                          Plaintiff,

                                                                                 Case # 15-CV-6385-FPG

v.

                                                                                 DECISION AND ORDER

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

Siree D. Vennor ("Vennor" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 8 and 9. For the reasons that follow, the Commissioner's Motion is GRANTED and Plaintiff's Motion is DENIED.

## BACKGROUND

On June 20, 2012, Vennor protectively filed applications for DIB and SSI. Tr.[1] 138-52, 171. She alleged that she had been disabled within the meaning of the Act since September 30, 2010 due to a lower back injury, injuries to both hands, and a heart attack. *Id.* After her application was denied at the initial administrative level, a hearing was held before Administrative Law Judge Julia D. Gibbs ("the ALJ") on November 12, 2013 in which the ALJ

---

[1]     References to "Tr." are to the administrative record in this matter.

1

presided by videoconference and considered Vennor's application *de novo*. Tr. 26-56. Vennor appeared at the hearing with her attorney and testified. *Id.* Ms. Booker, a Vocational Expert ("VE"), also testified by telephone. Tr. 50-55. On April 4, 2014, the ALJ issued a decision finding that Vennor was not disabled within the meaning of the Act. Tr. 11-23. That decision became the Commissioner's final decision when the Appeals Council denied Vennor's request for review on January 6, 2015. Tr. 1-4. Vennor commenced this action on June 24, 2015, seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

Determination of whether a claimant is disabled within the meaning of the Act requires an ALJ to follow a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Vennor's claim for benefits under the process described above. Upon review of that decision and the supporting administrative record, this Court finds that the ALJ's decision is based upon the correct legal standards, and that her determination that Vennor is not disabled is supported by substantial evidence.

At step one, the ALJ found that Vennor had not engaged in substantial gainful activity since September 30, 2010, the alleged onset date. Tr. 13. At step two, the ALJ found that Vennor has the following severe impairments: cervicalgia, lumbago, coronary artery disease, an injury to her bilateral hands, and obesity. Tr. 13-14. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 14-25.

Accordingly, the ALJ moved to step four. Here, the ALJ determined that Vennor retained the RFC to perform light work[2] with the following qualifications: she requires a sit/stand option every 30 minutes, she should not perform repetitive bending, twisting, or climbing, and she can lift up to 10 pounds only. Tr. 15-21. The ALJ relied on the VE's testimony and found

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

that this RFC prevents Vennor from performing her past relevant work as a home health aide, certified nurse's aide, or line worker. Tr. 21-22.

At step five, the ALJ relied on the VE's testimony and found that Vennor is capable of making an adjustment to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE testified that Vennor could work as a ticket taker, toll collector, or ticket seller. Tr. 23. Accordingly, the ALJ concluded that Vennor was not "disabled" under the Act. Tr. 23.

## II. Vennor's Challenges

Vennor raises three challenges to the ALJ's decision: (1) the RFC is not supported by substantial evidence because the ALJ improperly weighed the opinion evidence; (2) the ALJ's credibility analysis is not supported by substantial evidence; and (3) the ALJ's step five determination is not supported by substantial evidence. ECF No. 8, at 11-18. These arguments are addressed in turn below.

### A. The ALJ Properly Weighed the Opinion Evidence and Thus the RFC is Supported by Substantial Evidence.

Vennor argues that the RFC assessment is not supported by substantial evidence because the ALJ improperly weighed the opinion evidence. ECF No. 8-1, at 13-15. Essentially, Vennor contends that the ALJ violated the so-called "treating physician rule" when she afforded "little weight" to treating physician Clifford Ameduri, M.D. ("Dr. Ameduri"). The Commissioner argues that the ALJ properly weighed the opinion evidence based on the record as a whole (ECF No. 9-1, at 11-15), and this Court agrees.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). Under the

treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. "The ALJ must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(5)) (internal quotation marks and alterations omitted).

Here, the ALJ's explanation for affording only "little weight" to Dr. Ameduri's opinion is sufficient. In her decision, the ALJ detailed Dr. Ameduri's findings and pointed out inconsistencies within Dr. Ameduri's own opinions and with other evidence in the record. Tr. 21.

The ALJ found Dr. Ameduri's opinions internally inconsistent because Dr. Ameduri sometimes opined that Vennor had concentration issues and would miss at least two work days per month for at least one year, yet he also continuously noted that Vennor suffered only temporary impairments and could return to work with only lifting and repetitive bending

restrictions. Tr. 21. In March, August, and November of 2011, for instance, Dr. Ameduri noted that Vennor was temporarily impaired and could return to work with lifting and repetitive bending restrictions only, and he opined that these limitations would last for 15 to 90 days. Tr. 289, 293, 299. In December of 2011, on the other hand, Dr. Ameduri completed a Pain Limitation Questionnaire and Medical Source Statement for the Social Security Administration and indicated that Vennor's pain would interfere with her concentration, persistence, pace, and productivity, that she would miss at least two work days per month, and that her limitations would last for 12 consecutive months. Tr. 251-58. In February, April, and December of 2012, Dr. Ameduri again noted that Vennor was only temporarily impaired and could return to work with only lifting and repetitive bending restrictions, and he opined that these limitations would last for 90 days. Tr. 309, 311, 315. Yet in November of 2013, Dr. Ameduri indicated on the Social Security Administration's forms that Vennor's pain would interfere with her concentration, persistence, pace, and productivity, that she would miss at least two work days per month, and that her limitations would last for 12 consecutive months. Tr. 466-72, 474. Thus, it is inconsistent for Dr. Ameduri to note that Vennor had concentration issues and would miss at least two work days per month for at least one year and to also indicate that Vennor was only temporarily impaired and could work with lifting and bending restrictions.

The ALJ also pointed out that Dr. Ameduri's opinion was inconsistent with the medical evidence as a whole, which revealed that Vennor was medically stable and exhibited normal gait and motor strength of the upper and lower extremities with intact hand and finger dexterity and normal grip strength, and that her coronary artery disease was stable. *Id.* (citing Tr. 290-93, 299, 308-09, 311, 314-15, 318, 336, 339-40, 354, 356, 359, 383-84, 386-89, 391, 452-53, 457-58, 463-64). As stated previously, a treating physician's opinion is generally given more weight

than other reports, however, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)). Thus, the ALJ was entitled to give less weight to Dr. Ameduri's opinion because it was internally inconsistent and conflicted with other substantial evidence in the record. Even so, the ALJ's RFC is largely consistent with Dr. Ameduri's opinion, as it imposes a 10 pound lifting restriction, requires a sit/stand option every 30 minutes, and excludes repetitive bending, twisting, and climbing. Tr. 21 (citing Tr. 252-59, 466-74).

Finally, the ALJ was entitled to rely on other medical sources, such as Dr. Trounina, whose opinions the ALJ found well-supported and consistent with the evidence as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion . . . Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ analyzed each medical source's opinion (Tr. 20-21) and even reduced the weight given to three medical sources because the ALJ found Vennor *more* limited based on the hearing evidence (Tr. 20). This Court is satisfied that substantial evidence supports the RFC assessment and that the ALJ did not err when she weighed the medical opinions.

**B.     The ALJ's Credibility Assessment is Supported by Substantial Evidence.**

Vennor also asserts that the ALJ's credibility analysis was not clearly articulated and is not supported by substantial evidence. ECF No. 8-1, at 15-19. Specifically, Vennor contends that the ALJ improperly considered her daily activities, considered her receipt of unemployment

benefits, and "cherry picked" unfavorable evidence from the record. *Id.* These arguments are addressed in turn below.

### 1.     Activities of Daily Living

The ALJ noted that Vennor alleged that she suffered from medical conditions that cause her pain and interfere with sleeping, lifting, standing, walking, sitting, climbing, kneeling, squatting, and using her hands. Tr. 16. Nonetheless, the ALJ observed that Vennor reported that she could complete her personal care, try to exercise, prepare meals, drive, go out alone, shop in stores, play cards, and travel. *Id.* She could walk two blocks, and she discontinued her pain medication and only occasionally took Tylenol and muscle relaxers. *Id.* (citing Tr. 181-91, 337). Accordingly, the ALJ concluded that Vennor's credibility was weakened because she described daily activities inconsistent with her allegedly disabling symptoms and limitations. Tr. 16. Vennor contends that this was error because "[h]er limited participation in activities of daily living are not inconsistent with a claim of disability and do[] not indicate an ability to engage in substantial gainful activity on a regular and continuing basis." ECF No. 8-1, at 16-17.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson*, 2009 WL 3764221, at *7 (quotation marks and citation omitted). When a claimant alleges symptoms of a greater severity of impairment than can be shown by the objective medical evidence alone, the ALJ must consider several other factors, including the claimant's daily activities, when making a

credibility assessment. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Jackson*, 2009 WL 3764221, at *7 (quoting *Caroll v. Sec'y of Health & Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983)).

This Court finds that the ALJ properly considered Vennor's daily activities in accordance with these standards and did not err in finding that such activities weakened her credibility. Moreover, the ALJ did not rely on Vennor's daily activities as the sole reason to find her less credible. The ALJ also considered Vennor's receipt of unemployment benefits, which is discussed below, and extensively compared and analyzed the objective medical evidence, which constituted three full pages of her opinion. Tr. 17-19.

### 2. Receipt of Unemployment Benefits

The ALJ also considered Vennor's receipt of unemployment benefits and found that it detracted from her credibility. Tr. 16. Vennor received unemployment benefits in 2011, 2012, and 2013. Tr. 16-17 (citing Tr. 157-58). The ALJ noted that an individual must assert that he or she is ready, willing, and able to work to receive unemployment benefits, which the ALJ viewed as inconsistent with alleging limitations so severe as to be unable to engage in any substantial gainful activity. Tr. 17.

"Courts in this circuit have considered a plaintiff's receipt of unemployment benefits for the premise that "the record establishes that Plaintiff was able to work before [his disability onset date] as evidenced by Plaintiff's receipt of unemployment benefits, which requires an ability to work." *Jackson*, 2009 WL 3764221, at *8 (alteration in original) (quoting *Rich v. Comm'r of Soc. Sec.*, No. 08-CV-510S, 2009 WL 2923254, at *1 (W.D.N.Y. Sept. 10, 2009)). "Moreover, courts throughout the United States have held that the issue of a plaintiff claiming to be disabled

credibility assessment. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Jackson*, 2009 WL 3764221, at *7 (quoting *Caroll v. Sec'y of Health & Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983)).

This Court finds that the ALJ properly considered Vennor's daily activities in accordance with these standards and did not err in finding that such activities weakened her credibility. Moreover, the ALJ did not rely on Vennor's daily activities as the sole reason to find her less credible. The ALJ also considered Vennor's receipt of unemployment benefits, which is discussed below, and extensively compared and analyzed the objective medical evidence, which constituted three full pages of her opinion. Tr. 17-19.

### 2.     Receipt of Unemployment Benefits

The ALJ also considered Vennor's receipt of unemployment benefits and found that it detracted from her credibility. Tr. 16. Vennor received unemployment benefits in 2011, 2012, and 2013. Tr. 16-17 (citing Tr. 157-58). The ALJ noted that an individual must assert that he or she is ready, willing, and able to work to receive unemployment benefits, which the ALJ viewed as inconsistent with alleging limitations so severe as to be unable to engage in any substantial gainful activity. Tr. 17.

"Courts in this circuit have considered a plaintiff's receipt of unemployment benefits for the premise that "the record establishes that Plaintiff was able to work before [his disability onset date] as evidenced by Plaintiff's receipt of unemployment benefits, which requires an ability to work." *Jackson*, 2009 WL 3764221, at *8 (alteration in original) (quoting *Rich v. Comm'r of Soc. Sec.*, No. 08-CV-510S, 2009 WL 2923254, at *1 (W.D.N.Y. Sept. 10, 2009)). "Moreover, courts throughout the United States have held that the issue of a plaintiff claiming to be disabled

yet drawing unemployment insurance benefits may be considered in determining a plaintiff's credibility." *Id.* (citations omitted). Thus, "although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ [may] properly consider[] plaintiff's claim for unemployment benefits when assessing plaintiff's credibility." *Id.* (finding no reversible error in the ALJ's consideration of the plaintiff's application and eligibility for unemployment benefits); *Graham v. Colvin*, No. 13-CV-940S, 2014 WL 5465460, at *6 (W.D.N.Y. Oct. 28, 2014) (finding that the ALJ reasonably determined that the plaintiff's statements were not entirely credible based in part on her application and receipt of unemployment benefits).

Here, the ALJ briefly discussed Vennor's receipt of unemployment benefits (Tr. 16), and it is clear that she did not consider this the sole determining factor for finding Vennor less than credible. As explained above, the ALJ also considered Vennor's daily activities and compared and analyzed the objective medical evidence. Tr. 17-19. Accordingly, the ALJ's consideration of Vennor's receipt of unemployment benefits did not make the credibility assessment erroneous.

### 3. Cherry Picking Evidence

The ALJ analyzed the medical evidence and concluded that the objective findings failed to provide strong support for Vennor's allegedly disabling symptoms and limitations. Tr. 17-19. Vennor asserts that the ALJ "cherry picked" evidence and thus improperly relied on unfavorable evidence only. ECF No. 8-1, at 16-17. The Commissioner argues that the ALJ properly considered and discussed evidence that supported *and* detracted from Vennor's credibility (ECF No. 9, at 15-16), and this Court agrees.

"Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he [or she] cannot pick and choose evidence that supports a particular

conclusion. His [or her] failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (internal quotation marks and citations omitted); *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *17 (W.D.N.Y. Jan. 13, 2015) (noting that "cherry-picking" of evidence is improper). However, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," and this Court "must show special deference" to an ALJ's credibility determinations. *Silvers v. Colvin*, 67 F. Supp. 3d 570, 575 (W.D.N.Y. 2014) (citations omitted).

Here, the ALJ discussed Vennor's back and neck problems, coronary artery disease, hand injury, and obesity and compared and contrasted the medical evidence related to each issue. Tr. 17-19. Contrary to Vennor's assertion, the ALJ did not pick and choose evidence that supported an unfavorable decision while ignoring other relevant evidence. Instead, the ALJ analyzed evidence that supported and detracted from Vennor's credibility, sometimes within the same sentence. With respect to Vennor's back and neck problems, for instance, the ALJ noted that in October 2010 Vennor reported back and neck pain, but that x-rays of the cervical spine were unremarkable, x-rays of the lumbar spine were negative, and examination revealed no gross motor or sensory deficits and indicated normal reflexes. Tr. 17 (citing Tr. 215-16, 227, 231, 246, 250). The ALJ discussed medical evidence related to Vennor's back and neck problems from April 2010 to May 2013 and consistently referred to positive and negative findings. Tr. 17-18. As to Vennor's coronary artery disease, the ALJ mentioned cardiac issues indicated in the record, but also explained that examinations revealed that Vennor was doing reasonably well, her disease was stable with normal cardiac examinations, and she denied chest pain, shortness of breath, and ankle swelling. Tr. 18-19 (citing Tr. 299, 308-09, 383-84, 386-89, 391, 405, 452-53). With respect to Vennor's hand injury, the ALJ explained that she had a previous crush injury and

tendon laceration, but that several examinations indicated that her bilateral hands and wrists were within normal limits with normal grip strength, she had full range of motion and strength of the upper extremities, her hand and finger dexterity were intact, and x-rays showed no significant bony abnormalities. Tr. 19 (citing Tr. 296, 299, 311, 315, 319, 336, 339-40, 354, 356, 457-58, 463-64). Finally, the ALJ explained the different levels of obesity and concluded that Vennor's Level II obesity significantly limits her ability to perform basic work functions. Tr. 19. The ALJ reviewed and analyzed a great deal of medical evidence and considered findings that were favorable and unfavorable to Vennor's credibility and disability determination. This Court finds that the ALJ properly resolved conflicting medical evidence and provided extensive citations to medical evidence in the record to support her reasoning and conclusions.

For the reasons stated, the ALJ's credibility assessment is sufficiently specific to make clear to this Court and to Vennor the reasons for the weight given to her subjective complaints of pain and related symptoms. Based on the above observations, the ALJ reasonably determined that Vennor's statements were not entirely credible. Accordingly, this Court finds that the ALJ's credibility assessment is free from error and is supported by substantial evidence.

### C. The ALJ's Step Five Determination is Supported by Substantial Evidence.

At step five, the ALJ questioned the VE as to whether Vennor could perform her past work or other work in the national economy in light of her RFC. Tr. 22-23, 50-54. Vennor asserts that the hypothetical questions the ALJ posed to the VE were incomplete because they "did not fully reflect the extent of [Vennor]'s limitations," *i.e.*, they relied on an RFC that was not supported by substantial evidence. ECF No. 8-1, at 20. As explained above, however, this Court finds that the RFC is supported by substantial evidence and thus concludes that the ALJ's step five analysis is also supported by substantial evidence. *See Hamilton v. Comm'r of Soc.*

*Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) ("The Second Circuit has stated that there must be 'substantial record evidence to support the assumption upon which the vocational expert based [her] opinion.") (alteration in original) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)). "Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Hamilton*, 105 F. Supp. 3d at 229 (citing *Dumas*, 712 F.2d at 1554 n.4). Here, however, the ALJ posed hypothetical questions that fully captured Vennor's RFC. Tr. 51-54. Accordingly, this Court finds that the ALJ's step five analysis was proper and free from error.

## CONCLUSION

For the reasons stated above, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 3, 2016
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court